OZRO W. CLAPP *et al.* Admrs.

*v.*

CLARISSA EMERY.

*Filed at Ottawa May 14, 1881.*

1. TRUST—*facts showing one a trustee.* A son was authorized by his mother to collect and invest her money for her, he to retain, as his compensation, all the profits arising from the estate in excess of a certain per cent which he was to pay over to his mother. He did keep the money together, and invested it, from time to time, and spoke of and treated it as his mother's money. This was held sufficient to show a trust, and that the son was acting as a trustee, not as a borrower.

2. CHANCERY JURISDICTION—*to order an account between trustee and cestui que trust.* Where a son, under a power of attorney from his mother, collected moneys due her from her father's estate, and by her direction invested the same, from time to time, it was *held*, that a court of equity was competent, at least to take an account of the transactions between the son, as trustee, and his *cestui que trust*, even after the death of the trustee and administration granted on his estate.

3. EVIDENCE—*book of entries on bill for account.* On bill for an account by a *cestui que trust* against the personal representatives of the trustee, the defendants, at the instance of the complainant, produced a book of accounts, and the latter introduced it in evidence, which showed a less sum due the complainant than was decreed. The defendants insisted that the complainant was bound by this book; but the court held, as the evidence showed, beyond question, that the book did not contain all the items with which the trustee was chargeable, that the court below was not concluded by the balance shown in it, in rendering its decree.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Clarissa Emery exhibited her bill, on the equity side of the Superior Court of Cook county, against Ozro W. Clapp and Julia I. Emery, administrators of the estate of David W. Emery, deceased, alleging therein, among other things, that she is the widow and sole devisee of William S. Emery,

524    CLAPP et al. ADMRS. v. EMERY.    [May

Statement of the case.

deceased, late of Wilkesbarre, Pa., who died about November 16, 1871; that said William S. Emery left property, credits and assets, amounting to about $19,277.39; that she, being unable, for want of business education and experience, to manage said property, requested her son, David W. Emery, to act for her, and he consenting to do so, she thereupon made and delivered to him a power of attorney, authorizing him to collect and receive all moneys, debts, etc., due and payable to or belonging to her; that such power of attorney was made by her as executrix, and was intended to apply to the estate conveyed by said William to her, and was so accepted by said David. She charges that by such acceptance David became her agent and trustee, and received her estate which thereafter came into his hands, in trust for her; that he received, during the first year, the whole of the estate, about $19,277.39, including two policies of life insurance, payable to her, amounting to $4,777.16.

It is further alleged, that the increase, accumulations and profits accruing to complainant's estate, in the hands of said David, from the time he received the same to the time of his death, amount, with the principal, to about $29,017.19,—from which ought to be deducted the sum of $497.95, the funeral expenses of said William, which were paid by said David; that after said David had received said estate, it was mutually agreed between him and complainant that he should pay her, for and on account of the use thereof, sums of money amounting to an annual aggregate of seven per cent upon the amount of her said estate in his hands, and that the rest of the profits and advantages that might arise from the investments to be made by said David of the said estate, should be retained by him as a compensation for his services in that behalf; and she charges that her said estate was neither sold nor loaned to said David, but, during all the time of his management of the same, remained her sole and separate property, in the hands of said David, as her trustee.

It is further alleged, that David died intestate, on the 7th of July, 1878, at Chicago, and letters of administration upon his estate were issued to Julia I. Emery, his widow, and Ozro W. Clapp, the defendant; that a long time prior to his death, David had converted the said estate into money, and used the same, or caused the same to be used by others, principally in or about purchases of grain in the exchange markets of the boards of trade of Milwaukee and Chicago; that for a long time before his decease, David had associated with him in the management and investment of the said money, in the grain business aforesaid, said Ozro W. Clapp, and that Clapp thereby became the agent and trustee of the complainant, acting in conjunction with said David; that she believes that an account of the investment of the funds was kept in the books of said Clapp, in the name of "Emery & Co.," and charges that such account represents her money, held in trust for her by said Clapp, and used in business operations by him and said David, as her trustees and agents. Complainant credits said David with $5266.67, assumed to have been received by her from him.

It is further alleged, that a short time prior to the death of said David, all the business which said Clapp had theretofore transacted with the funds of complainant, through the agency of said David, had been closed, and the amount of money was placed to the credit of said "Emery & Co." in the books of account of said Clapp, and amounted, on the day of the decease of said David, as shown by said books, to the sum of $15,365.96, exclusive of the further sum of $730, on deposit in bank to the credit of said David, and also exclusive of the sum of $400 in gold, then in the hands of said Clapp, both of which sums, she claims, ought to be added to the amount of said $15,365.96, as the sole and separate property of the complainant. She charges, that so much of her estate as can be identified and delivered to her in kind, ought not to be treated as

any part of the estate of said David, and that said administrators should not be permitted to administer the same.

It is further alleged, that a citation was sued out of the probate court of Cook county, against the complainant and Samuel L. Moore, to require them to appear and answer concerning certain articles of property alleged to belong to the estate of said David W. Emery, and to be unlawfully withheld by them; that in response to such citation, complainant and said Moore filed their answers, in and by which the aforesaid claims of the complainant were, in substance, set forth, and complainant, in her amended answer and counter-claim to the petition on which said citation was issued, prayed the aid of said probate court in the premises, and that said administrators might be ordered to surrender and deliver over to complainant her securities and money, before described, and also that said probate court decree an allowance of the balance that would remain due from the estate of said David; that upon the hearing of said citation, and the answer and counter-claim thereto, it was, among other things, ordered by said probate court, in substance, that said counter-claim was of such a nature and extent that said probate court "hath not the proper jurisdiction and authority to hear and determine the same, and administer adequate relief, but such hearing and such relief properly belong to the court of chancery,"—and that, thereupon, said counter-claim was, by order of said court, disallowed, but without prejudice.

The oath to the answer of the defendants was waived.

The prayer was, among other things, that upon the hearing it may be decreed that the moneys aforesaid are the complainant's sole and separate estate; that it may also be ordered that complainant is entitled to the further sum of $7529.24, or such other sum as shall appear to be just, as a claim of the sixth class, against the estate of said David; and there was also the prayer for general relief.

The defendants' answer put in issue the material allegations of the bill.

The cause was heard on bill, answer and proofs, and the court decreed, thereupon, that the complainant was entitled to an accounting from the defendants, of and concerning the estate, moneys and effects of the complainant which were received by the said David W. Emery, in his lifetime, as set forth in the pleadings and proofs; that in taking and stating said account, the complainant ought to be credited with interest on the amount of her said estate, at the rate of six per cent per annum, and charged with the payments made to her on account of said estate by the said David W. Emery, and that the balance of said estate, to be determined by such account, ought to be paid by said administrators, in due course of administration of the estate of the said David W. Emery, as a claim of the seventh class, under the statute in such case made and provided.

It was referred to Franklin Denison, master in chancery, to take and state the account.

The master in chancery subsequently reported to the court the account, as stated by him, showing the sum of $19,479.93 due the complainant. Exceptions had been filed, both by complainant and defendants, before the master, to his report, which were overruled by him, and upon considering these in the Superior Court, that court overruled defendants' exceptions, and so far allowed complainant's exceptions that the amount due the complainant was found to be $22,823.27, instead of the amount found by the master, and for the payment of this sum decree was rendered.

Defendants prosecuted an appeal to the Appellate Court for the First District; but that court, on hearing, affirmed the decree of the Superior Court. This appeal is prosecuted upon that decree, and various errors are assigned bringing before the court the questions discussed in the opinion.

Mr. WILLIAM LAW, Jr., for the appellants:

Courts of equity will not assume jurisdiction to establish a trust in every case where confidence has been reposed or credit given. *Doyle et al.* v. *Murphy et ux.* 22 Ill. 502.

The fund, in order to be pursued, must be a separate and independent fund, distinguishable from every other fund. The right ceases when the means of ascertainment fail, which, of course, is the case when the subject matter is turned into money, and mixed and confounded in a general mass of property of the same description. *School Trustees, etc.* v. *Kirwin,* 25 Ill. 73; Story's Eq. Jur. secs. 1258–1259; *Thompson's Appeal,* 22 Pa. St. 16.

If the property held in trust had no ear mark, and is not distinguishable from the rest of the property of the deceased, the party entitled to it must claim as a general creditor. *Johnson* v. *Ames et al.* 11 Pick. 181; *Tricothie* v. *Austin et al.* 4 Mason, 29.

To sustain a bill for an account, there must be mutual demands. A single matter can not be the subject of an account—there must be a series of transactions on one side, and payments on the other. *Walker et al.* v. *Cheever et al.* 35 N. H. 345; *Phillips* v. *Phillips,* 9 Hare, 471; *Dinwiddie* v. *Bailey,* 6 Ves. 136; *Moses* v. *Lewis,* 12 Price, 502; *Porter* v. *Spencer,* 2 Johns. Ch. 171; *Foley* v. *Hill,* 2 H. L. Cases, 28; *O'Mahoney* v. *Dickson,* 2 Shoales & Lefroy, 400; 1 Story's Eq. Jur. secs. 458, 458 a, 459; *Appeal of Passayunk B. M. Ass.* 83 Pa. St. 441.

The bare relation of principal and agent is not sufficient to entitle the former to relief in equity. *Frietas* v. *Don Santos,* 1 Y. & Jerv. 574; *King* v. *Rossett,* 2 id. 33.

The probate court has complete jurisdiction of this claim. Mark the language of the sixth class of claims, in secs. 70 and 71 of the statute: "where the decedent has received money in trust for any purpose," etc.

A court of equity will not assume jurisdiction, except in extraordinary cases, where the remedy afforded by statute is

inadequate. It is for the very plain reason that the statute has pointed out a different mode, and the party must pursue the remedy provided by 'law. *Steele et al. Admrs.* v. *Clark, Admr.* 77 Ill. 471 ; *Walker et al.* v. *Cheever et al.* 35 N. H. 345 ; *Phillips* v. *Phillips,* 9 Hare, 471 ; *Harris* v. *Douglas et al.* 64 Ill. 460.

A court of chancery will not exercise its general jurisdiction to take upon itself the administration of estates, and supersede that of the probate court, except in extraordinary cases, when some special reasons are shown to exist why administration should be withdrawn from the probate court. *Freeland* v. *Dazey et al.* 25 Ill. 294 ; *Heustis et al.* v. *Johnson et al.* 84 id. 61 ; *Crain, Guardian, etc.* v. *Kennedy et al.* 85 id. 340 ; *Hales et al.* v. *Holland,* 92 id. 494 ; *Blanchard* v. *Williamson,* 70 id. 649.

The probate court has equitable jurisdiction in the allowance of claims against the estates of deceased persons. *Dickson, Assignee, etc.* v. *Buell, Admr.* 21 Ill. 203 ; *Moore et al.* v. *Rogers,* 19 id. 347. And has full power to settle this controversy. *Chipman et al.* v. *Montgomery et al.* 63 N. Y. 221.

A bill in equity can not be upheld against executors or administrators, merely upon the ground that they hold the estate in trust, but a special case must be shown calling for equitable relief. *Walker et al.* v. *Cheever et al.* 35 N. H. 339.

Mr. C. C. BONNEY, and Mr. JOHN WHITBECK, for the appellee :

1. The court of equity has a general jurisdiction in matters of administration, concurrent with that of the county court in many respects, and to a larger extent, as embracing trusts, equitable assets, marshaling assets, etc. *Jennings et al.* v. *McConnel et al.* 17 Ill. 150 ; Story's Eq. Jur. secs. 530, 545.

2. Courts of equity have a paramount jurisdiction in cases of administration and the settlement of estates, and may control courts of law in their action in the settlement and distri-

530 CLAPP et al. ADMRS. v. EMERY. [May

Opinion of the Court.

bution of assets. *Grattan* v. *Grattan et al.* 18 Ill. 171; 1 Story's Eq. Jur. ch. 9, secs. 530, 533; Williams on Exrs. 239, 1240; *Townsend et al.* v. *Radcliffe*, 44 Ill. 448.

3. It is entirely proper for the probate court to refer a question which it has power to determine, but which the court of chancery can more conveniently or completely entertain and adjudge, to be settled by the latter tribunal. *Townsend et al.* v. *Radcliffe*, 44 Ill. 448.

4. The court of equity will not ordinarily assume jurisdiction until the claimant has exhibited his claim, and had it allowed in the county court; but if any special reason that may be deemed sufficient can be assigned why that court can not afford the requisite relief, equity will give its assistance. *Harris* v. *Douglas et al.* 64 Ill. 469.

5. The probate court has found and entered upon its records that it had not jurisdiction to inquire into and determine the claims made by the complainant. And though it may be claimed that the probate court had authority to investigate and decide the matter, it must be admitted that there was sufficient doubt and difficulty about the case to warrant the probate court in referring the matter to the court of chancery. *Pahlman* v. *Graves*, 26 Ill. 408.

6. It can not be denied that David W. Emery stood in such a relation to his mother that he was bound, at any time during his life, to account to her for all the money and property which he received as her estate. This liability to account, and the peculiar circumstances of the case, give the court of chancery jurisdiction, even though there be a concurrent jurisdiction at law. Adams' Eq. 220, 221; Dunlap's Paley, 47.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellants contend that no ground of equitable jurisdiction is established, and that the bill should, therefore, have been dismissed.

1881.]          CLAPP et al. ADMRS. v. EMERY.          531

Opinion of the Court.

The evidence, in our opinion, sufficiently shows a trust. It shows that David W. Emery was authorized to collect and invest appellee's money for her; that he kept the money together, and invested it, from time to time, and spoke of it and treated it as being not his, but his mother's money. He was, we think, but her trustee in investing it—not a borrower of it.

It was said in *School Trustees, etc.* v. *Kirwin, Exr. et al.* 25 Ill. 73: "It is not necessary, if the trust be moneys, that the particular coin or kind of money, or the individual pieces, shall be identified, in order to pursue it, but its identity as a fund must be preserved, so that it can be distinguished from all other money. So long as it can be followed as a separate and independent fund, distinguishable from any other fund, it can be pursued." See, also, *Kirby, Exr.* v. *Wilson, ante,* 240.

There seems no difficulty, here, from the evidence, in following and identifying this as a separate and independent fund, down to the time of the death of David W. Emery. The fact that the court ordered payment to be made of it as of a *seventh* instead of a *sixth* class claim, might have been complained of by appellee, but certainly affords no cause of complaint to appellants.

That, assuming we are right in our conclusion as to the effect of the evidence here, a court of equity is, at least, competent to take an account of the transactions between the trustee and his *cestui que trust,* admits of no controversy. Hill on Trustees, (4th Am. ed.) 66, *42; Adams' Eq. (6th Am. ed.) 442, *220; 1 Story's Eq. Jur. § 465; Bispham's Principles of Equity, (2d ed.) 525, sec. 479.

A small book, mentioned in the pleadings and evidence as the "little book," which was in the possession of appellee, was produced at the instance of appellants, and by them introduced in evidence. It purports to contain items of account —creditor and debtor—between appellee and David W. Emery, and shows a balance to the credit of appellee of only

532        CLAPP et al. ADMRS. v. EMERY.        [May

Opinion of the Court.

$11,292.75; and it is contended the court should have been governed by this balance in rendering the decree.

We think the evidence satisfactorily shows that this book did not contain accounts of all the transactions between the parties, and that it did not truly set forth the balance due appellee. There are numerous circumstances that tend to establish this. It would seem enough, however, to say, that the evidence clearly shows, beyond question, that that book does not contain all the items with which David W. was chargeable. That book, too, shows him chargeable with $11,000, outstanding May 1, 1875, and that his total receipts were only $13,420; and yet, on June 12, 1875, he receipted to Baldwin, Stone and Emery, as attorney, (and, all the evidence considered, it is reasonably certain that he was attorney for no one but appellee,) for $18,655.71.

The remaining objection to be considered, is that to the rejection by the Superior Court of the master's report of a balance of $19,479.93, and finding a balance, in its stead, of $22,823.27, and decreeing that appellee is entitled to the payment of that amount out of the estate of David W. Emery, deceased.

In this, we think, the Superior Court erred. From the master's report, it appears that he found the amount of moneys received and collected by David to be $23,311.22, less the sum of William S. Emery's funeral expenses, which he paid ($497.95), leaving a balance of $22,813.27. The master shows that all of appellee's fortune, all the money she had, was in the hands of David W. Emery, and she received no money from any other source whatever, and she had no other money at the date of her husband's death. The family, which consisted of appellee and two daughters, were living at Wilkesbarre, Pennsylvania. They lived well, but economically. They dressed well, and entertained visitors. The daughters were young, and being educated. No accounts were kept, either on the part of David W. Emery, of the moneys he received, or which he paid to appellee, or disbursed

on her account, or by appellee of the moneys received from him. Appellee was examined by the master as a witness, and, under his directions, she also exhibited to him all the receipts for money paid out by her, or on her account, which she had in her possession; and the master, after getting the best information he could, reports as follows:

"The following is my estimate of the annual living expenses of Mrs.-Clarissa Emery and family: (The figures are taken from her examination, unless followed by the word 'estimated;' where this word is added, I have used my judgment, assisted by the examination of Mrs. Emery and the testimony.)

| | |
|---|---:|
| Rent, $20 a month, | $240.00 |
| Coal, per annum, | 50.00 |
| Groceries, | 400.00 |
| Pew rent, | 30.00 |
| Dry goods bill, | 200.00 |
| Meat bills, $12 a month, | 144.00 |
| Millinery, (estimated) | 40.00 |
| Hired help, | ·25.00 |
| Shoes, (estimated) | 25.00 |
| Other living expenses, (estimated) | 50.00 |
| Total, | $1214.00 |

" In my opinion, the above is a moderate statement of the living expenses of Mrs. Emery and family. I think that Mrs. Clarissa Emery and family, for the ordinary living expenses of a family, (without taking into consideration another class of expenditures, which may be termed extraordinary expenses, which I will mention hereafter,) lived up to the average income of her estate, *i. e.*, that she spent the average of it. There would naturally be a tendency to confine the living expenses to the income. It is a feeling which prevails amongst all people who have capital, with a sufficient income to live upon.

"His Honor, Judge Moore, in the interlocutory decree which referred this cause to the master to state an account, found, *inter alia,* as before stated, that said D. W. Emery should be charged with interest, at the rate of six per cent per annum. It is impossible to obtain mathematical accuracy where no accounts were kept. In the absence of these accounts, I have given the matter earnest consideration, and the above is my opinion.

"I therefore find that the ordinary living expenses of Mrs. Clarissa Emery, all of which were paid out of her money in her son's (David W. Emery) hands, were sufficient to consume the income of her estate in the hands of her son, computed at the rate of six per cent per annum. In addition to the ordinary living expenses of Mrs. Emery and family, there were what I term extraordinary expenses. Though some of these expenses may not strictly come under this head, yet I have not considered them before. There were two sicknesses in the family, one of Mrs. Emery and one of her daughter. Mrs. Emery's physician's bill was $50; her daughter's (estimated), $12, making altogether $62. School books for the two girls, $30; pocket money for the girls, $100; carpet, $31.50; crockery, $25; traveling expenses for Mrs. Emery to New York, $250; ditto, of daughter to New Jersey, $100; ditto, to Chicago, and moving, $100; furniture of new house in Chicago, $500, less amount received for sale of furniture in Wilkesbarre, $250—$250; loaned George W. Emery, $150; loan of sister, $50; another loan to George W. Emery, $200; sewing machine, $85; bed room set given to daughter, $40; linen given to daughter, $20; fitting daughter to be married, $150; water tax, personal property tax, six and two-thirds years (estimated), $100; hedge about W. S. Emery's grave, $15; plumbers' bill, $50; repairs (estimated), $100; court costs, settling estate, (estimated) $25; total, $1733.51.

"The examination of Mrs. Emery developed the fact that her memory was not good. She never kept accounts, and

1881.]          CLAPP et al. ADMRS. v. EMERY.          535

Opinion of the Court.

knew nothing of figures. During her son's lifetime she never wanted for money, as he always kept her abundantly supplied. Although her tastes were simple, and she was economically disposed, it must be evident that she expended, and her son expended for her, a much larger sum than she was aware of. We all know how many various and unlooked for expenses beset us in daily life, and experience teaches us that the only method of keeping expenses within proper limit is to keep a rigid account.

" I have enumerated a class of expenses above, which D. W. Emery, as I believe, actually paid for his mother. From the nature of the case, these sums, just above mentioned, can only cover a moiety of the money paid out for her. I should never feel satisfied to stop here, and say that the estate of D. W. Emery was to receive credit for no more. There are many occasions of paying out money, which an acquaintance with life in a city of 12,000 inhabitants, like Wilkesbarre, or in Chicago, will suggest. The amount which Mrs. Emery assigns as the expenses of outfitting at the time of her daughter's marriage—$150—which includes one silk dress and one other dress, etc., etc.,—I consider very low. There are druggists' bills, street car fare, little charities,—in short, many things which require money. It should not be forgotten that all money is not wisely spent. A certain per cent of it is foolishly spent by nearly every person.

" I can not feel certain that no considerable sums were not paid out for some purpose or purposes, which sums have escaped the memory of Mrs. Emery. It seems $500 per annum is not more than a fair estimate of the amount of these additional or extraordinary expenses of Mrs. Clarissa Emery and her family, and so I find, after consideration of the whole case, and from the examination of Mrs. Clarissa Emery, and from the evidence, that in addition to the living expenses of Mrs. Emery and family, which I have found to be equal to the income of her property in the hands of D. W. Emery, the sum of $500 per annum, for six and two-

thirds years, should be credited to his estate on the above account, making the sum of $3,333.34; debit, $22,813.27; credit, $3333.34. The amount due Clarissa Emery from the estate of D. W. Emery, $19,479.93.

"I find that the complainant, Clarissa Emery, is entitled to recover this amount of nineteen thousand four hundred and seventy-nine dollars and ninety-three cents ($19,479.93), from the estate of D. W. Emery."

In our opinion, the evidence preserved in the record fails to impeach the general accuracy of this report. The relation of the parties,—that of mother and son,—may explain why no more care was observed on either side in the keeping of accounts. It is true, the burden is on appellant, to establish the credits, but this is not to be done, as in a criminal case, beyond a reasonable doubt.

If, in the light of experience in like affairs, there is a preponderance of evidence in favor of the credit, it should be allowed. If David W. were alive, he might much lighten the burden upon his estate, by showing additional credits. His death ought not to be availed of to do injustice. There is proof in the record, showing that appellee, in stating what the estate owed her, often put it several hundred dollars less than the amount found by the master's report.

We think the decree should have been only for the amount found due by the master's report.

The decree of the Appellate Court will be reversed, and the cause remanded, with directions that the decree of the Superior Court be reversed, and a decree entered in that court for the amount of the master's report.

*Decree reversed.*