THE UNION NATIONAL BANK OF CHICAGO

*v.*

JOHN W. GOETZ *et al.*

*Filed at Ottawa June 15, 1891.*

138 127
140 152
140 491
141 268
144 511
138 127
50a 393
51a 185
138 127
157 69
157 215
138 127
56a 453
138 127
174 464
73a 678
74a 544
138 127
81a 183
81a 256
81a 297
138 127
182 356
138 127
90a 1248
138 127
197 1110
197 1111
d197 4114
101a 1387

1. TRUSTS—*pursuing a trust fund—identification.* Where a trust fund has been wrongfully converted into other property, if its identity can be traced it will be held, in its new form, liable to the rights of the *cestui que trust,* except as against a *bona fide* purchaser without notice. But the right of pursuing it fails when the means of ascertainment fails, which is always the case when the subject matter is turned into money, or mixed and confounded in a general mass of property of the same description.

2. The principle upon which a trust fund is pursued and its proceeds held subject to the trust is, that the trustee has wrongfully, and contrary to the intention of the owner, converted it, and when there has been a commingling of funds or property, that it has been done without the consent of the *cestui que trust.*

3. If any property, in its original state and form, is covered by a trust in favor of the principal, no change of that state and form can divest the property of such trust, or give the agent or trustee converting it, or those who represent him in right, (not being *bona fide* purchasers,) any more valid claim in respect to it than they had before such change. It matters not in the slightest degree into what other form different from the original the change may have been made, for the product of a substitute for the original thing still follows the nature of the thing itself, so long as it can be ascertained to be such.

4. On bill by one partner against another for the appointment of a receiver and settlement of the partnership affairs, a bank, by leave of court, was made a defendant, and filed a cross-bill, in which it was alleged that the firm, by fraudulent representations of its financial condition, borrowed of the bank $15,000, which was laid out in the purchase of merchandise, which was so mixed and commingled with other goods as to be incapable of identification, and asking a prior lien on the goods, as to such debt: *Held,* that the cross-bill was bad on demurrer, and could not be maintained.

5. Where a merchant procures the loan of money to be used in his business, by a false and fraudulent representation of his financial condition, and invests the same in the purchase of goods, which are mixed with others so as to be incapable of identification, a court of equity will not hold the borrower as a trustee of the lender, for the reasons that

the relation between the parties is simply that of debtor and creditor, and that the identity of the goods purchased with the money can not be determined.

6. SAME—*to prevent fraud or injustice a court of chancery will raise a trust.* Where the acquisition of a legal estate is tainted with fraud, actual or equitable, or where the trust depends upon some equitable rule independently of the existence of fraud, courts of chancery, in order to prevent injustice, will raise a trust, and fasten it upon the conscience of the legal owner, so as to convert him into a trustee for the parties who, in equity, are entitled to the beneficial enjoyment. But this is a rule of necessity, to prevent fraud.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

The original bill in this case was by appellee Goetz, against Louis W. Reiss, to settle a co-partnership between them in a mercantile business in the city of Chicago, under the firm name of John W. Goetz & Co. The bill alleges the insolvency of the firm, prays the appointment of a receiver, and that all the effects of the co-partnership be ordered to be turned over to and sold by him, and the debts of the co-partnership paid, under the directions of the court. Subsequently, appellant, by leave of the court, became a party defendant to said bill, and filed a cross-bill, alleging in substance as follows:

That on January 23, 1888, the defendants Goetz and Reiss were, and for a long time prior had been, partners in business in the city of Chicago, under the firm name of John W. Goetz & Co., and that the complainant, during the same time, was and still is engaged in the business of banking, and is a corporation organized under the laws of the United States, known as the National Bank act; that on January 23, 1888, said Goetz & Co., for the purpose of establishing a credit with said bank, and of inducing it to loan to said firm money from time to time, as desired by them, represented and stated in writing to said bank as follows:

"CHICAGO, ILL., *January 23, 1888.*

"John W. Goetz & Co., of Chicago, county of Cook, State of Illinois, for the purpose of obtaining a credit with the Union National Bank of Chicago, Ill., do make the following statement and representations of our present true financial circumstances, wealth and mercantile respectability, which said representations shall be the basis of our credit with the Union National Bank, both for our present credit and for all credits for and during the period of two years from this date, agreeing to immediately notify them of any material change in or of our business matters during the period above mentioned. In case of failure or insolvency, it is agreed that all notes shall be considered then due. A co-partnership of John W. Goetz and Louis W. Reiss.

· "*Assets*—Stock of goods on hand at value, $114,000.

"*Liabilities*—For merchandise, not to exceed $8000; for borrowed money, $15,000.

(Signed)          JOHN W. GOETZ,
For J. W. G. & Co."

Whereby said bank and its officers were informed by said firm that their capital was $81,000 over and above all liabilities; that at various times since that date said John W. Goetz & Co. have, for the same purpose, made to said bank oral statements of their financial condition, all of which were to the effect that they were doing a large and profitable business and were rapidly increasing their net capital, as shown by said written statement; that the last of these oral statements was made on the first day of April, 1889; that relying upon this statement of January 23, 1888, and the subsequent confirmatory statements so made, and believing them to be true, said bank gave to said John W. Goetz & Co. a line of credit for money loaned from time to time, and among others loaned to them the following named sums at the dates stated, to-wit; On February 14, 1889, $2500; February 20, 1889, $5000; March 8, 1889, $5000; April 1, 1889, $2500,—amounting to.

the sum of $15,000; that upon the loan first above stated
there has been credited the sum of $524.10, leaving the
amount still due from said firm to said bank the sum of $14,-
475.90; that the statements so made by Goetz & Co. to said
bank were false and fraudulent when made, and well known
by them to be false and fraudulent; that in fact the defend-
ants, at the time of making said written statement, did not.
have on hand a stock of goods of the value of $114,000, and
owed, in fact, for merchandise, many thousands of dollars
in excess of $8000, and many thousands of dollars for bor-
rowed money in excess of $15,000, and were in fact at all
times insolvent,—by means of which said false and fraudu-
lent representations said bank was deceived, cheated and
defrauded, and so continues to be, and the said defendants
came into possession of the money so obtained, by fraud;
that having acquired said money by such fraud, the defend-
ants became and still are trustees of the cross-complainant in.
respect to the same, and accountable for said moneys, either
*in specie* or whatsoever else they placed or invested it; that
said trust funds were by said defendants invested and paid out,
from time to time, for merchandise, which was by them brought
into their store on State street, in the city of Chicago, and
there so mixed and commingled with other merchandise bought
with other funds or procured by other means that the cross-
complainant is now unable to identify the same, but avers that
said merchandise so purchased and paid for by said trust funds,
or other merchandise bought with the proceeds thereof, to
which said trust also attached, were in the store of said defend-
ants when the same was taken possession of by the receiver,.
as hereinafter mentioned, and passed into his possession, and
so remain, unless disposed of by said receiver, in which case
the proceeds thereof are in his hands subject to said trust;
that J. S. Huey was appointed receiver on April 10, 1889,
under the original bill, and now has the custody and control
of the property and effects of said firm; that by reason of the

facts aforesaid, the cross-complainant is entitled, in equity, to pursue said trust money into the property now in the hands of said receiver, and is entitled, by reason of the confusion of goods, brought about by said defendants, to a lien upon the whole stock of merchandise now in said receiver's possession for the restoration of the money out of which it has been defrauded.

There was prayer for relief, and that the moneys so loaned by the cross-complainant, and unpaid, may be decreed to have been obtained by the defendants by fraud, and that they may be held liable as trustees of the cross-complainant in respect to the same; that said trust money may be decreed to have been invested by the defendants, by successive and continuing transactions, in the merchandise now in the possession of the receiver, and to have become, by the act of the defendants, so confused with the general bulk of such merchandise, that the cross-complainant is entitled to a lien upon the whole for its reimbursement; that such lien and reimbursement may be decreed accordingly, and that in the meantime the receiver be directed to retain all the merchandise which came to his possession, and the proceeds of any that has been sold, to abide the final decree.

Thereupon other creditors of said firm were allowed to become parties defendant to said cross-bill, and they, together with the receiver and Goetz, filed a general demurrer to the same, which the Superior Court of Cook county sustained, and entered an order dismissing the cross-bill at the costs of the complainant therein. That decree has been affirmed in the Appellate Court for the First District, and from that judgment of affirmance this appeal is prosecuted.

Messrs. TENNEY, HAWLEY & COFFEEN, and Mr. WILLIAM E. CHURCH, for the appellant:

Of the right of the vendor to rescind for fraud, see Benjamin on Sales, secs. 433-443; *Hodgeden* v. *Hubbard*, 18 Vt. 504;

*Express Co.* v. *Wiltsie*, 79 Ill. 92; *Preston* v. *Spaulding*, 120 id. 228; *Farwell* v. *Hanchett*, id. 577.

When a person fraudulently receives property, or defrauds another of his estate, a court of equity will hold him as a trustee for the person defrauded. Perry on Trusts, sec. 166; Story's Eq. Jur. secs. 1255, 1265; Pomeroy's Eq. Jur. sec. 1051; *Newton* v. *Porter*, 69 N. Y. 133.

When the original trust fund has been converted into other property, equity may pursue the substituted property.

If a party wrongfully mixes and confuses his goods with those of another, so that they can not be distinguished, the innocent party will take the whole. 2 Schouler on Pers. Prop. secs. 47, 48; Story's Eq. Jur. sec. 468; *Beach* v. *Schmultz*, 20 Ill. 185; *Diversey* v. *Johnson*, 93 Ill. 547; *First Nat. Bank* v. *Schween*, 127 id. 573; *King* v. *Hamilton*, 16 id. 190.

Messrs. KRAUS, MAYER & STEIN, for the appellees:

The relation between appellant and Goetz & Co. is that of creditor and debtor,—not that of trustee and *cestui que trust.* *Trecothic* v. *Austin*, 4 Mason, 16; *Ferris* v. *Van Vichten*, 73 N. Y. 113; *Bank of Commerce* v. *Russell*, 2 Dill. 215; *Thompson's Appeal*, 27 Pa. St. 16.

Of the right of the *cestui que trust* to fasten a trust on other property received from a sale of trust property, see *Lathrop* v. *Bampton*, 31 Cal. 17; *Goodell* v. *Buck*, 67 Me. 514; *Steamboat Co.* v. *Locke*, 73 id. 370; *United States* v. *Waterborough*, 2 Ware, 158; *In re Hallett*, L. R. 13 Ch. Div. 696; *Johnson* v. *Ames*, 11 Pick. 172.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

The doctrine sought to be invoked by the complainant in this cross-bill is purely and strictly an equitable doctrine, adopted by courts of chancery only in cases of necessity, to prevent injustice and wrong. That the relation existing between the parties to the loans mentioned, as created by their

contract, was that of debtor and creditor, must be conceded. The most that can be or is claimed by the appellant is, that on account of false representations made by the borrowers such contract was voidable, at its option, for fraud. When the fraud was discovered does not appear, and there is no pretense whatever that any attempt has been made to rescind; therefore, up to the time of filing the cross-bill, the relation of debtor and creditor existed, and if that relation can be changed to that of trustee and *cestui que trust* it must be done by construction, under the rule that "where the acquisition of the legal estate is tainted with fraud, actual or equitable, or where the trust depends upon some equitable rule, independently of the existence of fraud," courts of chancery, in order to prevent injustice, "will raise a trust, and fasten it upon the conscience of the legal owner, so as to convert him into a trustee for the parties who, in equity, are entitled to the beneficial enjoyment." (Hill on Trustees, 144.) As before said, this is a doctrine of necessity, and it was said by Lord NOTTINGHAM in *Cook* v. *Fountan,* 3 Swanst. 585 : "The law never implies, the court never presumes, a trust, but in case of absolute necessity."

In the effort of counsel for appellant to establish a broad equity in favor of their client on which to predicate this necessity, the rights of other creditors of Goetz & Co. are wholly ignored. In fact, it is said that the question here involved is purely one "between appellant and the parties who wrongfully obtained its money." This position is wholly untenable. The very object of this cross-bill is to obtain priority over the general creditors of the firm, both the original and cross-bills showing it to be insolvent.

In our view of the case it is unimportant to determine whether or not the fraud alleged in the cross-bill would, under other circumstances, be sufficient to authorize a court of chancery to declare the relation of trustee and *cestuis que trust* between appellant and John W. Goetz & Co., because if it be conceded that that relation should be held to exist, still the bill shows

that the so-called "trust fund" has passed beyond the reach of the court in this proceeding. It will be observed that so far from attempting to identify any particular property in the hands of the receiver as having been purchased with the moneys borrowed from appellant, or the proceeds thereof, it is expressly averred that such identification is impossible, and all that is attempted by way of tracing those moneys into the assets held by the receiver, is the averment that "merchandise so paid for by said trust fund, or other merchandise bought with the proceeds thereof, to which said trust also attached, were in the store of said defendants when the same was taken possession of by the receiver, and passed into his possession, and so remained unless disposed of by him, in which case the proceeds thereof are in his hands subject to said trust." The present value of the merchandise purchased with said money, or its proceeds, is not even stated. Every allegation may be true and still the chief value of the assets sought to be taken have resulted from other funds or credits of said Goetz & Co.

Justice Story, in his Equity Jurisprudence, speaking of the right of the owner to follow a trust fund, says: "The general proposition which is maintained, both at law and in equity, upon this subject, is, that if any property, in its original state and form, is covered by a trust in favor of the principal, no change of that state and form can divest it of such trust, or give the agent or trustee converting it, or those who represent him in right, (not being *bona fide* purchasers,) any more valid claim in respect to it than they had before such change. * * * It matters not in the slightest degree into what other form different from the original the change may have been made, * * * for the product of a substitute for the original thing still follows the nature of the thing itself, so long as it can be ascertained to be such. The right ceases when the means of ascertainment fail, which, of course, is the case when the subject matter is turned into money, and mixed and confounded in a general mass of property of the same description." (Vol. 2,

sec. 1258.) The same doctrine is announced and practically applied by the learned justice in *Trecothic* v. *Austin*, 4 Mason, 16.

This court held in *School Trustees* v. *Kirwin et al.* 25 Ill. 73, that "it is not necessary, if the trust be moneys, that the particular coin or kind of money or the individual pieces shall be identified in order to pursue it, but its identity as a fund must be preserved, so that it can be distinguished from all other money." And in that case we said: "The means of ascertaining the identity of this fund having failed by the money having been mixed and confounded in a general mass of property in the bank of the same description, the right to pursue it must also fail."

In *Thompson's Appeal*, 27 Pa. St. 16, the Supreme Court of Pennsylvania said: "Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced it will be held, in its new form, liable to the rights of the *cestui que trust*. No change of its state and form can divest it of such trust. So long as it can be identified, either as the original property of the *cestui que trust* or as the product of it, equity will follow it, and the right of reclamation attaches to it until detached by the superior equity of a *bona fide* purchaser for a valuable consideration without notice. The substitute for the original thing follows the nature of the thing itself, so long as it can be ascertained to be such; but the right of pursuing it fails when the means of ascertainment fail. This is always the case when the subject matter is turned into money, and mixed and confounded in a general mass of property of the same description. This mixture has taken place in the case under consideration. It is impossible for a chancellor to lay his hand upon a single article of property, or on a single dollar of money included in the assignment, and say that any particular thing or sum of money is either the original property of Seth Matthews' heirs or the product of it. The decree was, therefore, erroneous." To the same effect are *Goodel* v. *Buck*, 67 Me. 514; *Portland and Harpwell Steam-*

*boat Co.* v. *Locke,* 73 id. 270; *United States* v. *Inhabitants of Waterbury,* 2 Ware, 158; *Englar* v. *Offutt,* 70 Md. 78; *Johnson* v. *Ames,* 11 Pick. 172.

Many other like cases might be cited, but enough has been shown to clearly indicate the line of decisions holding the doctrine that trust funds can only be pursued when they can be clearly distinguished from other property held by the trustee, or by those representing him, and that this court is fully committed to that rule. When it is said that the matters decided in *King* v. *Hamilton,* 16 Ill. 190, *Clapp et al.* v. *Emery* 98 Ill. 523, or *First National Bank* v. *Schween,* 127 Ill. 573, recognize, much less hold, a different doctrine, the scope of these cases is clearly misconceived. They in no way conflict with *School Trustees* v. *Kirwin, supra.*

Comment upon the authorities cited by counsel for appellant said to hold a different rule is unnecessary. Many of them are reviewed by SEYMOUR, J., in *Philadelphia Nat. Bank* v. *Dowd, Receiver,* L. R. Ann. b. 2, p. 480, and shown to be reconcilable with the rule above announced, which he applies to the facts of that case, and holds to be the one supported by the great weight of authority in this country. It is clear, however, that none of the authorities relied upon, under the most liberal interpretation, can be construed as authority for sustaining this cross-bill, thereby giving appellant a prior lien upon the general assets held by the receiver. The principle upon which a trust fund is pursued and its proceeds held subject to the trust is, that the trustee has wrongfully, and contrary to the intention of the owner, converted it, and where there is a commingling of funds or property, that has been done without the consent of the *cestui que trust.* If, as contended here, appellant has a right to a lien upon the whole assets held by the receiver, it must be because Goetz & Co. *wrongfully* put its money into some of those assets, and *wrongfully* commingled them with others into a general mass, on the principle that a court of equity will not allow the right of the

*cestui que trust* to be defeated by the *wrongful, unauthorized* act of the trustee. But the cross-bill does not attempt to show such wrongful conversion or commingling. The fair inference from its allegations is, that the money was borrowed with the express understanding that it was to be used by the borrowers just as it was used, in the general business of the firm. The allegations of fraud go only to the manner of obtaining the money,—might be given the effect to create the relation of trustee and *cestui que trust,*—but these allegations in no sense charge a misappropriation or wrongful confusion of the trust fund.

We are clearly of the opinion that there is no principle of equity upon which this cross-bill can be maintained, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*