MARY D. LANTERMAN

*v.*

CHARLES N. TRAVOUS *et al.*

*Opinion filed October 24, 1898.*

| 174 | 459 |
| 81a | 257 |
| 81a | 297 |
| 174 | 459 |
| 182 | 356 |
| 174 | 459 |
| 90a | [1]249 |

BANKS—*voluntary assignments—when depositor cannot be preferred.* One who deposits a check in a bank and receives credit therefor is not entitled, after the check has been paid by the drawee bank and the proceeds thereof so mingled with other money of the bank in which it was deposited as to lose their identity as a fund, to be made a preferred creditor for the amount of the check upon the voluntary assignment of the latter bank a few days after receiving the check, although the officers then knew the bank was insolvent. (*American Trust and Savings Bank* v. *Gueder & Paeschke Manf. Co.* 150 Ill. 336, distinguished.)

*Lanterman* v. *Travous*, 73 Ill. App. 670, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the County Court of Madison county; the Hon. WILLIAM P. EARLY, Judge, presiding.

JOHN G. IRWIN, for appellant:

The statute makes it *prima facie* evidence of intent to defraud, for any banker, or person doing a banking business, to receive deposits within thirty days before failure, suspension or voluntary liquidation. Hurd's Stat. 1895, chap. 38, sec. 25 *a*.

This act applies not only to criminal cases, but to civil proceedings as well, wherever acts done in contravention of its provisions are the subject of judicial investigation. *Bank* v. *Manufacturing Co.* 150 Ill. 340.

The assignee takes subject not only to liens and encumbrances, but to all equities to which the estate was liable at the time of the assignment. *Davis* v. *Dock Co.* 129 Ill. 187; *Yates* v. *Dodge*, 123 id. 50; *Jack* v. *Weiennett*, 115 id. 111; *Lowe* v. *Mason*, 140 id. 112; *Trust Co.* v. *Trumbull*, 137 id. 179.

Where checks were received on deposit when the bank was hopelessly insolvent, within a few minutes before it closed its doors, and were collected afterwards by an agent of the bank, the proceeds were declared to be held by the receiver in trust for the depositor because of the fraud of the bank in receiving the deposit under such circumstances. *Wasson* v. *Hawkins*, 59 Fed. Rep. 237; *Railroad Co.* v. *Johnson*, 133 U. S. 566.

The confusion of trust funds wrongfully diverted does not destroy the right to follow them. When they are traced to the assets of the unfaithful trustee, or of one who has knowledge of the character of the funds, they become a preferred charge upon the entire assets with which they are mingled, no matter whether such assets consist of money, bills, notes and land or other assets. The fact that the trust fund goes to swell the volume of

the assets gives the beneficial owner an equitable right to preference. *Meyers* v. *Board of Education*, 51 Kan. 87.

W. M. WARNOCK, (BURROUGHS & BRO., of counsel,) for appellees:

The right of the true owner to pursue his property does not necessarily cease when its identity has been destroyed, but his means of enforcing that right must necessarily cease when it has become so mixed with other property of like kind that he can no longer trace or identify it. *Thompson's Appeal*, 27 Pa. St. 16; *United States* v. *Inhabitants of Waterborough*, Daveis' D. C. 159; *United States* v. *Inhabitants of Waterbury*, 2 Ware, 258; *Godell* v. *Bush*, 67 Me. 514; *P. H. & S. Co.* v. *Locke*, 73 id. 270; *Euglar* v. *Offutt*, 70 Md. 78; *Johnson* v. *Ames*, 11 Pick. 172; *Illinois T. & S. B. Co.* 21 Blatchf. 275; 2 Story's Eq. Jur. 1259; 2 Pomeroy's Eq. Jur. sec. 1058.

The mere fact that one becomes a creditor of the bank through fraud of its president, and that the bank became a trustee *ex maleficio*, would give him no right of preference over other creditors, unless he can trace and identify his money as a part of the common mass. *Wasson* v. *Hawkins*, 59 Fed. Rep. 237.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming an order of the county court of Madison county denying the petition of appellant to be made a preferred creditor of the estate of J. A. Prickett & Son, bankers, who had assigned to appellees. The facts out of which this claim of preference arose are these: About noon on Friday, December 11, 1896, the appellant, Mary D. Lanterman, deposited a check for $2487.68, properly endorsed, drawn on the bank of Edwardsville, with the banking firm of J. A. Prickett & Son. She received on it $37.68 in cash, and a pass-book, in which the balance,

$2450, was entered to her credit. On the next day, about four o'clock in the afternoon, an employee of the bank took this check, together with other checks, to the bank of Edwardsville for an adjustment of checks in the usual way, being in the nature of a clearing-house transaction. While there, another check on the Prickett bank for about $1600 came in and was included in the settlement. The result was, Prickett & Son received a balance of over $1000, the exact amount not appearing in the evidence, which, with the checks taken up against their bank, was placed among the funds of the bank. On Monday, December 14, 1896, about nine o'clock in the morning, the firm of J. A. Prickett & Son made an assignment to appellees for the benefit of their creditors. Appellant filed her claim for $2450 within the prescribed time, and a verified petition setting up these facts, and asked that it be made a preferred claim and be paid in full. The petition alleges that at the time the check was delivered to the bank the firm of J. A. Prickett & Son was insolvent, and had been for a long time prior thereto,—much longer than thirty days,—and that such fact of insolvency was well known to the person receiving her deposit at the time he so received it, but was not known to appellant; that it was a fraud on her to receive such deposit, and that by force of the statute all the acts and transactions in the premises were null and void and of no force or effect, in law or equity; that the money realized upon her check never became a part of the assets of the bank and that the assignee never acquired any title thereto. The court denied the prayer of the petition but allowed the claim generally.

The appellant claims that by virtue of the "act for the protection of bank depositors," approved June 4, 1879, (Myers' Stat. 444,) the whole transaction was rendered fraudulent *ab initio*, and that no title to the deposit passed to the bank or its assignees, and that she is entitled to reclaim it in the hands of the latter. Counsel for appellant has ably presented his views in support of this posi-

tion, and cited as an analogous case *American Trust and Savings Bank* v. *Gueder & Paeschke Manf. Co.* 150 Ill. 336. The appellee in that case asked to have a certain check that it had deposited with appellant's assignor returned to it, said check being uncollected in the hands of the assignee. This court said (p. 339): "We think it clear that the deposit was, in legal effect, a negotiation of the check, so as to vest the legal title thereto in Schaffner & Co., with the right on their part to charge it back to the petitioner's deposit account in case it should not be paid on present-ment.   *   *   *   The transaction, then, was one which, in the absence of fraud, would have passed the title of the check irrevocably to Schaffner & Co., and the claim of the petitioner to relief must therefore rest solely upon its charge of fraud, thus enabling it to rescind the transac-tion and reclaim the check on that ground." (See, also, *American Exchange Nat. Bank* v. *Mining Co.* 165 Ill. 103.) In the case quoted from it was further said: "It seems plain that, if this statute can be held to apply to this case, it is proved, *prima facie*, that Schaffner & Co. received the check with intent to defraud the petitioner, and as their failure has resulted in a loss to the petitioner of the de-posit, or at least of a considerable part of it, the fraud thus intended was accomplished, and as no effort was made at the hearing to rebut the *prima facie* presumption raised by the statute, the legal proof of a fraud both in-tended and consummated must be deemed, for all the pur-poses of this proceeding, to be conclusive." And it was held that the statute in question was applicable to civil as well as criminal cases, and the judgment of the Appel-late Court ordering a surrender of the check to the peti-tioner was affirmed.

It will be seen that the sole ground for relief in these cases is placed on the ground of fraud, thus enabling the depositor to rescind the transaction and reclaim the check deposited. In the case above quoted from, the check had been returned to the bank and was in the hands of the

assignee, and the rescission was rendered effectual by restoring the check to the depositor. But in the case at bar the check had passed out of the hands of the bank before the assignment was made, and had been paid by the bank on which it was drawn, and the money received in the clearing-house transaction mingled with the other moneys of the bank, if, indeed, it were shown that any money had been received for this identical check. A rescission, therefore, to enable appellant to recover her check was impossible.

Appellant claims that the proceeds of the check were mingled with the other money of the bank, and that it is only equitable that an equal amount of money should be taken from the money of the bank and be paid to her, and cases from other jurisdictions are cited in support of this contention, among others, *Wasson* v. *Hawkins*, 59 Fed. Rep. 233. In that case the court said: "The mere fact that the plaintiff became a creditor of the insolvent bank through the fraud of its president, and that the bank became a trustee *ex maleficio*, would give him no right to preference over other creditors, unless he can trace and identify his money as a part of the common mass. But when it is shown by indubitable proofs, or is admitted, as in the present case, that the identical bank notes and coins so obtained by fraud constitute a part of the common mass of bank notes and coins in the hands of the receiver, in my judgment the modern and better doctrine is that the depositor may take out of the common mass so much as he has put in.—Lewin on Trusts, 1092, 1093." It is unnecessary here to consider whether such a doctrine is or is not consistent with the rule established in this State, as announced in many cases. Thus, it was laid down in *School Trustees* v. *Kirwin*, 25 Ill. 73, that when money deposited was mixed up with the money in the bank its identity as a fund was thereby lost, and that the right to pursue it must also fail. (*Union Nat. Bank* v. *Goetz*, 138 Ill. 127; *Wetherell* v. *O'Brien*, 140 id. 146; *Mutual Accident Ass.*

v. *Jacobs,* 141 id. 261; *Bayor* v. *American Trust and Savings Bank,* 157 id. 62.) It was said in the *Bayor case, supra,* (p. 68): "It has frequently been announced as the law of this State, that even in a case where a definite and actual trust fund, which possesses all the attributes of a separate and distinct identity, has been so mixed and mingled with other funds as to render identification impossible, the *cestui que trust,* in the event of the insolvency of the trustee, is remitted to the position and the rights of a general creditor." It does not affect the question that an action may lie against the defaulting trustee for his wrongful act.

But if the rule contended for prevailed in this State it would not sustain appellant's position. Other checks besides her own went into the clearance settlement with the Bank of Edwardsville, and it cannot be known what the proceeds of her check were. How can it be said that the balance of $1000 in money was received for her check rather than for the others? And if it could be determined that Prickett & Son received in the settlement the $1600 check drawn on themselves as part of the proceeds of appellant's check, it would avail appellant nothing. Indeed, she does not seek to have that check delivered to her as a part of the proceeds of her own. It is clear that the proceeds of appellant's check cannot be traced. They have been mingled with the common mass and their identity is lost. It cannot even be said with certainty that any such proceeds are in the hands of the assignee in the form of money. It is not so much a question between appellant and the insolvents as between her and other creditors, and no reason is perceived from this record why, as between them, the maxim that equality is equity should not prevail.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*