81 287
s182s444

# M. W. Weir, Assignee, v. Richard Mowe, Sarah Brownlee, John Rofter, Adam Schroeder, Charles Pyle, Joseph Pyle, Louis Neumeyer, Miss E. P. Lindley and Peter Curran.

1. TRUST FUNDS—*Insolvent Trustee.*—Where a trustee becomes insolvent and makes an assignment, and the trust fund becomes merged and mingled with the assets in the hands of the assignee and incapable of identification, it has no priority over other claims, and should be paid *pro rata* with the claims of other creditors.

2. SAME—*Are to be Distributed by the County Court.*—How trust funds in the hands of the assignee are to be paid over and distributed, are matters for the determination of the County Court, where such proceedings are pending, and its judgment and orders in that respect can only be reviewed as the judgments and decrees of other courts of competent and original jurisdiction are reviewable by Appellate Courts.

3. INSOLVENT ESTATES—*Management of, Committed to the County Court.*—The whole management of the estates of insolvent debtors, under voluntary assignments, is committed to the jurisdiction of the County Courts, with full authority and jurisdiction.

4. COURTS OF CHANCERY—*Will Not Assume Jurisdiction of Voluntary Assignments.*—A court of chancery will not assume jurisdiction on a bill to direct how the County Court shall distribute a fund over which

it has full and complete jurisdiction by positive statute, unless under special circumstances.

5. Voluntary Assignments—*General Creditors Must be Made Parties.*—General creditors under the voluntary assignment act have an interest in the assets in the hands of the assignee, and are entitled to be represented in all proceedings affecting their interests, and if not made parties they are not concluded by any judgment or decree entered in it. Neither would such judgment or decree, or any finding of fact stated in it, be competent evidence against them in any subsequent proceeding.

6. Parties—*Res Adjudicata.*—No one can be injuriously affected by a judgment or decree of any court entered in a proceeding to which he was not a party.

**Voluntary Assignments.**—Petition for a priority. Trial in the County Court of St. Clair County; the Hon. Edward C. Roads, Judge, presiding. Hearing and judgment for defendant; appeal by petitioners. Heard in this court at the August term, 1898. Affirmed. Opinion filed March 10, 1899.

Turner & Holder, attorneys for appellant.

The assignee of an insolvent debtor, under a voluntary assignment, is not an innocent purchaser for value; he takes the property assigned subject to all equities, liens, incumbrances, whether created by operation of law or by the act of the insolvent, which existed against the same in the hands of the insolvent. His title is subject to every infirmity by which it was affected in the hands of the assignor. Burrill on Assignments, 6th Ed., pages 482–3; Candlish on Voluntary Assignments, Secs. 149 and 150 and cases cited; Brown v. Brabb, 67 Mich. 17, reported in 11 Am. St. R. 549; see also note to Union National Bank v. Goetz, 32 Am. St. R. 125; Myers v. Board of Education, 51 Kan. 87; 37 Am. St. R. 263, and cases cited; Peak v. Ellicott, 30 Kan. 156, 46 Am. R. 90; Independent District v. King, 80 Iowa, 497; Davenport Plow Works v. Lamp Co., 80 Iowa, 722; 20 Am. St. R. 442; Harrison v. Smith, 83 Mo. 210, 53 Am. R. 571; Stoller v. Coates, 88 Mo. 514; Chase v. Chapin, 130 Mass. 131; National Bank v. Ins. Co., 104 U. S. 54; Peters v. Bain, 133 U. S. 670; Union Stock Yards Bank v. Gillespie, 137 U. S. 421; Halle v. National Park Bank of N. Y., 140 Ill. 413; Wetherell v. Bldg. & L. Ass'n, 153 Ill. 365; Hooven, Owen & Rentchler Co. v. Burdette, 153 Ill. 672; Schwartz v.

Messinger, 167 Ill. 474; Jones et al. v. Kilbreth, 49 Ohio St. 401.

The assignee for the benefit of creditors is not the representative of the creditors, but is the agent of the assignor for the distribution of the property assigned. He takes no greater or other interest in the property assigned than the assignor had. Any property held in trust for another by the assignor does not pass to the assignee by the assignment. Flint on Trusts and Trustees, Sec. 240; Ludwig v. Highley, 5 Barr. 132; Vol. 24, Am. and Eng. Ency. of Law, 21; Home Savings and State Bank v. Wheeler, 74 Ill. App. 261; Jones et al. v. Kilbreth, 49 Ohio St. 401.

A trustee can not lawfully intermingle the trust property with his own, and if there is a breach of trust by a trustee in this respect, the trust funds may be followed into the hands of a purchaser for value if he had notice of it, and into the hands of one not purchasing for value whether he had notice of the breach or not. Flint on Trusts and Trustees, Sec. 316, Vol. 27, Am. and Eng. Ency. of Law, 251; Norton et al. v. Hixon, 25 Ill. 439; Henry County v. Winnebago Drainage Co., 52 Ill. 454; Att'y General v. Agricultural College, 85 Ill. 516; Union Mutual L. Ins. Co. v. Spaids, 99 Ill. 251; Fast v. McPherson, 98 Ill. 496; Sholty v. Sholty, 140 Ill. 81; Halle v. National Park Bank of N. Y., 140 Ill. 413.

HORNER & WINKELMANN, attorneys for appellee.

When Seiter deposited the Riggin fund and mixed the same with the other moneys in the bank, so that the Riggin money could no longer be identified, the fund so deposited lost its identity and with it the character of a trust fund. Bayor v. Est. of Schaffner, etc., 51 Ill. App. 185; School Trustees v. Kirwin et al., 25 Ill. 73; Union National Bank v. Goetz, 138 Ill. 127; Wetherell v. O'Brien, 140 Ill. 146; Mutual Accident Ass'n v. Jacobs, 141 Ill. 261.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Henry Seiter was appointed trustee of James Riggin, an

insane person, by the Circuit Court of St. Clair County, and
gave bond in the sum of $25,000, with Madison T. Stookey,
Herm G. Weber, James D. Baker, Lucius D. Turner, Mar-
shall W. Weir and Robert W. Holder, as sureties.

. On February 7, 1894, he received as such trustee $14,-
644.78, which sum he deposited in the bank of Henry Seiter
& Co., at Lebanon, a bank owned and managed by himself
alone.    Under the name of Henry Seiter & Co., he issued
to himself a certificate of deposit in his own name, as trustee,
for $14,644.78, due one year after date at four per cent
interest.

On December 10, 1894, Seiter made an assignment to
Marshall W. Weir, appellant.    A part of the assets of Seiter
coming into the hands of Weir by virtue of the assignment
were debts due to the Henry Seiter & Co. bank, as follows:
From the Illinois Farm Company $3,733.32; from the
Lebanon Dairy and Creamery Company, $17,110.64.
These are referred to as overdrafts made by these incor-
porated companies, on the Seiter bank.    Seiter owned
all the stock in these companies except four shares in each,
which were held by persons acting as officers of the com-
panies.    In answer to the question, referring to these
companies, "You were absolute owner and controller?"
Mr. Seiter answered, "Yes, sir."    He further states that
the capital stock of the Lebanon Dairy and Creamery Com-
pany was $125,000, and that its par value was $100 per
share.

On January 14, 1895, Seiter, as trustee, rendered an
account to the Circuit Court showing a balance due as
trustee of $14,025.39, which was approved.    He then resigned
as trustee, and Lucius D. Turner was appointed in his
place.    He accepted the trust and on January 16, 1895,
filed his bond.

On January 4, 1895, the assignee gave the statutory
notice to creditors to file their claims, and on April 5, 1895,
reported the claims filed, among which was the claim by
Turner, as trustee for the Riggin fund as a trust fund.    No
objection was filed to this claim.

On September 4, 1897, the assignee made a report " showing that the claim of L. D. Turner, as trustee of James H. Riggin, insane, amounting to $14,181.42 had been satisfied out of certain items inventoried as overdrafts, by order and decree of the Circuit Court, entered in the matter of the petition of L. D. Turner, trustee of James H. Riggin, an insane person, against Henry Seiter and Marshall W. Weir, assignee of Henry Seiter, insolvent."

The order of the County Court to show cause why this report should not be approved is as follows :

"On the 7th of September, 1897, comes Marshall W. Weir, assignee of Henry Seiter, insolvent, and it appearing to the court that Marshall W. Weir, as such assignee, has heretofore on the 4th day of September, 1897, filed a statement of moneys collected and disbursements made by him as such assignee, and praying for the approval thereof, and for an order of the court to pay a dividend to the creditors of said estate, and on motion of counsel for such assignee, it is ordered by the court, that all objections to said report be filed by September 14, 1897, at nine o'clock A. M."

On the 11th day of September, 1897, appellees filed their exceptions to so much of the assignee's report as showed the satisfaction of the Riggin trust fund out of the overdrafts as follows :

First exception :  " The $14,181.42 Riggin trust fund paid to Turner, trustee, by order of the Circuit Court, is in violation of Sec. 6, Chap. 10, Assignments for the Benefit of Creditors, and said order is not sufficient in law."

General exception : The distribution of the assigned property should be *pro rata* to the above named creditors, etc.

On the 23d of September, 1897, these objections to the assignee's report were overruled, the record showing this reason, as stated by the court, for overruling them :

" And now on the 23d day of September, 1897, the objections to the Riggin trust fund claim, as set out in the first and second exceptions, coming on for hearing, and understanding that the objectors, by their counsel, consent thereto, the court overrules the objections," etc.

At this date the hearing upon other objections to the report by other parties was set for October 8th. The placitum shows that these proceedings were of the July term of the St. Clair County Court, the law term of said court commencing on the second Mondays of March, July and November.

On October 9th leave was given to James D. Baker, representing the Kneisley heirs, to file objections instanter to the assignee's report. On November 6th, a hearing on the claim of Louis Zerwick, who had filed objections, was heard and his objections overruled, and the hearing of objections of James D. Baker was set for November 12th.

On November 12th the appellees moved the court to set aside the order of September 23d, overruling their objections to the assignee's report, whereupon the court set the hearing upon said motion for the 22d of November, on which day the motion to set aside the order of September approving the assignee's report as to the Riggin claim was allowed, and a rehearing upon the objections of appellees was set for November 30th.

It will be seen from this recital that the consideration of the assignee's report was still pending before the County Court when the motion was made to set aside the order of September 23d.

On the 30th of November, a hearing was had before the court on the exceptions filed by appellees, and on February 17, 1898, the record shows that the court "sustains the objections to act of assignee in paying Riggin and Nichols claims as preferred claims. Act set aside, and ordered that assignee recover money paid on said Riggin and Nichols claims, and account for same as general assets; ordered that the said claims be treated as a claim of general creditors and share *pro rata* with general creditors."

To which ruling assignee excepted, and appealed to this court.

On March 28, 1895, Turner filed his petition as trustee in the Circuit Court of St. Clair County, making Seiter, and Weir as assignee, defendants. On June 20, 1895, the court

entered its decree upon the petition. The decree finds that the court had jurisdiction of the subject-matter and of the parties defendant.

That Henry Seiter was the sole owner of and carried on the banking business at Lebanon under the name of Henry Seiter & Co.; that on the 11th of December, 1894, Seiter being insolvent, executed a deed of assignment to Marshall W. Weir, thereby transferring all the real and personal property possessed by him, for the benefit of his creditors, including all the assets of the bank of Henry Seiter & Co.; that between the 7th of February, 1894, and December 10, 1894, there was paid out by the bank of Henry Seiter & Co. in overdrafts to sundry customers the sum of $23,546.07; that in said overdrafts were included the said trust fund belonging to said James Riggin, insane; that the defendant, Marshall W. Weir, as such assignee, is now collecting such overdrafts, together with the assets of Henry Seiter, insolvent. The court further finds that Lucius D. Turner, as trustee, had demanded of Weir, as assignee, that he separate said trust fund from the funds of Seiter and pay over the said trust fund to him, the said Turner, as trustee, but that Weir had failed to pay over said fund or any part of it.

The court thereupon decreed that Weir, as assignee, pay said sum of $14,025.59, with lawful interest from January 14, 1895, or such part thereof as he can realize out of the assets in his hands, designated as overdrafts, and listed in his answer as a part of the property turned over to him by said Henry Seiter at the time of said assignment; said payment to be made as soon as said Weir can realize out of said assets called overdrafts; that the said sum of $14,025.59, included in said assets and denominated as overdrafts, is the property and funds of said James H. Riggin, and that the said Lucius D. Turner, as trustee, is hereby declared to have a first lien upon the assets denominated overdrafts for said sum of $14,025.59, and lawful interest thereon.

Appellants in their brief say:

"We insist that there are two valid reasons why the report of the assignee, as filed September 4, 1897, should be approved, viz.:

First. This trust fund of $14,181.42 never having been the property of Seiter, could not be converted to his individual use and become his property by the deed of assignment, and be therefore transferred to his assignee to be by his said assignee distributed among Seiter's creditors.

Second. The Circuit Court, having custody of this trust fund and having appointed Seiter as trustee for same, had jurisdiction of the subject-matter and of the parties in the proceedings instituted by Turner, the successor of Seiter as trustee for this fund, against Seiter, and Weir as assignee of Seiter, and the decree entered therein was binding upon all parties to said proceeding, and *res adjudicata* as to this item.

We therefore respectfully submit that the order of the County Court appealed from should be reversed and the report of appellant approved."

These being the reasons urged by appellant for a reversal of the judgment of the County Court, they will be considered in their order.

In reference to the first reason assigned by appellant, namely, " that the trust fund of $14,181.42 never having been the property of Seiter, it could not be converted to his own use and become his property," it may be said that Seiter, in taking a certificate of deposit from the bank of Henry Seiter & Co., due in one year, at four per cent interest, and placing the money in the bank with funds of the bank, did convert it to his own use. There is nothing in the evidence to show that it was kept separate and apart from other moneys, or that it was loaned as a fund and is represented by overdrafts of the Lebanon Dairy and Creamery Company and the Illinois Farm Company.

Seiter testifies with reference to this money as follows:

Q. Do you remember about how much you received? A. Between fourteen and fifteen thousand dollars.

Q. State what you did with it. A. I deposited it in the bank.

Q. Didn't you take a bank book, or anything to show that you deposited it in the bank? A. Took a certificate.

Q. Do you remember the date of the certificate? A. I have it with me, I believe. February 7, 1874.

Q. Will you please read that? I want to introduce it in evidence. A. It is an ordinary certificate of deposit for

money deposited by Mr. Seiter. trustee for James Riggin, being for $14,644.78, payable to order of himself as trustee, in one year after date, on return of the certificate, properly indorsed, with interest from date at four per cent per annum, no interest after maturity.

      *     *     *     *     *     *

Q. At the time when you were appointed here and made the deposit in the bank, did you actually make the deposit in the bank, or did you simply take a certificate, with the money already in the bank? A. I made the deposit then; put the money in the bank.

      *     *     *     *     *     *

Q. Did you get any cash money from any one when this document was issued? A. I must have received, otherwise my books would not have balanced.

Q. The money was simply transferred to you? A. I told you I didn't remember whether the fund was in the bank. If it was not in there it was not transferred.

Q. You didn't get that amount of money from the party whom you succeeded? A. Yes, sir.

Q. You got that much cash? A. Yes, sir.

Q. Then you deposited it in the bank with the moneys fo the bank and took a receipt for it? A. Yes, sir.

Q. After that, that money went out like any other money. A. Yes, sir. It was deposited in the bank same as any other money.

Q. Can you say that any of that money was in the bank at the time when you assigned? A. Any of that identical money?

Q. Yes. A. I could not say that there was.

Q. It had passed out like any other money? A. Yes, sir.

Q. You could not tell where that money went to? A. No, sir.

### Cross-examination by Appellant.

Q. You stated in your examination a while ago that you were the owner of both of these corporations, the Illinois Farm Company, and the Lebanon Dairy and Creamery Company, except four shares in each? A. Four shares in each.

Q. These four shares were held simply by persons filling offices? A. Yes, sir.

Q. You were absolute owner and controller? A. Yes, sir.

Q. Between this seventh day of February and the time you assigned in December, you put considerable money into the creamery? A. Yes, sir.

Q. And checked out to that a large amount of money more than it had? A. Yes, sir.

Q. I believe the schedule shows $17,000? A. $17,000.

Q. And some two or three thousand to the other? A. Yes, sir.

Q. That was commenced immediately after this deposit in your bank? A. Perhaps some time before that, but the bulk of it in the summer.

Q. By Mr. Merrills: How much money was there in the bank at the time the assignment was made? A. Very little.

Q. About how much? A. A few hundred dollars.

Q. As much as five hundred? A. The schedule will show that; about three hundred dollars. Something like that.

Q. I have reference to the Lebanon Bank. A. About three hundred dollars.

Q. By Mr. Weir: Was there any part of this Riggin fund that ever went into the O'Fallon Bank? A. Could not tell you that. It was deposited in the Lebanon Bank.

Q. You could not tell where it went? A. Could not say whether it went to the O'Fallon bank.

The overdrafts referred to are shown in the schedule as follows:

### LEBANON OVERDRAFTS.

| | |
|---|---:|
| J. M. Chamberlain | $ 107.40 |
| Illinois Farm Co | 3,733.32 |
| Lebanon Coal and Mch. Ass'n | 78.77 |
| Lebanon Dairy and Creamery Co | 17,110.64 |
| J. H. Lehman | 1.03 |
| Wm. Midgley | 303.64 |
| Fred Pesold | 3.43 |

The testimony of Seiter is all that bears upon the use and disposition of this trust fund. From his testimony it is impossible to say where the money went, when it went, or how it went. It is uncertain when it came into the bank; uncertain whether it was on deposit by Seiter's predecessor or whether Seiter received it in cash from his predecessor. There is nothing to indicate how much other money was in the bank when it was deposited, or how much other money

came in between the date of its deposit and the date of the assignment. Nor is there any evidence showing what amount of money was paid from the bank while it was on deposit or to whom paid. Seiter testifies that he was the sole owner and manager of the Henry Seiter & Co. bank, and the "absolute owner and controller of the Lebanon Dairy and Creamery Company and the Illinois Farm Company." In other words, Seiter was himself the bank, the dairy company and the farm company. He testifies that the money (the trust fund) was deposited the same as any other money and went out the same as any other money, and that he could not tell where it went to. He further testifies that he could not say whether any part of it went to the O'Fallon bank. If Seiter, owning the bank and owning these properties, and using the money of the bank indiscriminately wherever he saw fit, can not tell where the Riggin fund went, how can it be said that it is represented by the overdrafts? It is apparent from this evidence that there is no identification of the trust fund in any of the overdrafts scheduled. It follows then that the fund, being merged and mingled with the assets in the hands of the assignee and incapable of identification, has no priority over other claims, and should be paid *pro rata* with the claims of general creditors. School Trustees v. Kirwin, 25 Ill. 73; Union Nat. Bank v. Goetz, 138 Ill. 127; Wetherell v. O'Brien, 140 Ill. 146; Mutual Accident Ass'n v. Jacobs, 141 Ill. 261; Bayor v. Am. Trust Co., 157 Ill. 68; Lanterman v. Travous, 174 Ill. 459.

So far as the County Court is involved there does not appear to have been at any time an order to pay over the collections on the overdrafts to Turner, as trustee, or any adjudication by the County Court that the overdrafts represented this trust fund. The assignee in his report made September 4, 1897, reported to the County Court " that the claim of L. D. Turner, as trustee of James H. Riggin, insane, amounting to $14,181.42, had been satisfied out of certain items inventoried as overdrafts by order and decree of the Circuit Court, entered in the matter of the petition

of L. D. Turner, trustee of James H. Riggin, an insane person, against Henry Seiter, and Marshall W. Weir, assignee of Henry Seiter, insolvent."

Objections were filed by appellees to so much of this report as referred to the satisfaction of the Riggin fund, and to giving it priority over the claims of general creditors. These objections were overruled September 23, 1897. On November 12, 1897, appellees moved to set aside the order overruling these objections. On November 23d the court set aside the order of September 23d, and on November 30th a hearing was had upon the objections. The subject-matter was taken under advisement by the court, and on February 17, 1898, the objection was sustained, and the assignee directed to pay the Riggin fund *pro rata* with the claims of other creditors.

It will be seen from the evidence that up to this time no order of distribution appears to have been made by the County Court. The manner of distribution, involving the question of priority of claims, was then still pending before the court, with power to change any ruling bearing upon this subject, that, in its judgment, law and equity required. Mowatt v. Cole, 59 Ill. App. 345; Hanford Oil Co. v. First Nat. Bank, 126 Ill. 584.

The only remaining question to be considered is the effect of the decree of the Circuit Court, made June 20, 1898, upon the petition of Turner against Seiter, and Weir as assignee. If the Circuit Court had jurisdiction as against appellees, to decide upon the priority of claims against the Seiter estate in the hands of the assignee by virtue of the deed of assignment, or to decide that certain assets in the hands of the assignee, scheduled by Seiter as his property, and so inventoried by the assignee, were not his property, but were the property of James H. Riggin, and therefore subject to the claim of Turner as trustee, then this question is *res adjudicata*, and the decree of the Circuit Court is binding not only upon the assignee, but upon the County Court and upon all the creditors of Seiter.

When the assignee took possession of the assets of Seiter,

the County Court had exclusive jurisdiction in controlling their application in the payment of claims.    It had power to pass upon the character of claims, to investigate liens, and to equitably adjust priorities to the same extent that a court of chancery might do.    Any other construction of the assignment law would open the door to confusion and conflicts of jurisdiction.    There may be special instances, as in the enforcement of a mechanic's lien, in which a Circuit Court may have jurisdiction to enforce the lien, when the property of a debtor is in the hands of an assignee.    But there must be reasons for these special instances growing out of the character of the lien, or because it can not be enforced except in the Circuit Court.    The decisions of the Supreme Court of this State clearly establish this doctrine.

The case of Freydendall et al. v. Baldwin, 103 Ill. 330, is a leading case upon this point, and has been repeatedly followed.    It is there said:

"Thus it is seen that the whole management of the estates of insolvent debtors, under voluntary assignments, is committed to the jurisdiction of County Courts, and by Sec. 14, full authority and jurisdiction are given to such courts in regard to such matters.    How the trust funds in the hands of the assignee are to be paid over and distributed, are matters for the determination of the County Court where such proceedings are pending, and its judgments and orders in that respect can only be reviewed as the judgments and decrees of other courts of competent and original jurisdiction are reviewable by Appellate Courts.    It was entirely competent for the General Assembly to confer such jurisdiction on County Courts, and their jurisdiction in such matters is too manifest to be disputed.    Certainly a court of chancery will not assume jurisdiction on a bill to interfere and direct how the County Court shall distribute a fund over which it has full and complete jurisdiction by positive statute unless under special circumstances."

To the same effect are Hanchett v. Waterbury, 115 Ill. 226; Farwell v. Crandall, 120 Ill. 70; Wilson v. Aaron, 132 Ill. 241; Plume v. Caldwell, 136 Ill. 166; Newman v. Commercial Bank, 156 Ill. 539; Osborn v. Williams, 34 Ill. App. 421; Brown v. Stewart, 159 Ill. 212.

In Clark v. Burke, 163 Ill. 334, it is said:

"We have held in Freydendall v. Baldwin, 103 Ill. 325, Hanchett v. Waterbury, 115 Ill. 220, and other cases, that the County Court under these provisions has complete control over the settlement of assigned estates and that other courts have no power to interfere with the exercise of that jurisdiction. In other words, the County Court, in the settlement of insolvent estates under this statute, is not, as seems to be assumed by counsel for appellant, a court of limited jurisdiction, but, on the contrary, in such matters is not only a court of general but of exclusive jurisdiction."

It follows from this construction of the assignment law, that the Circuit Court was without authority to interfere with the distribution of the Seiter assets in the hands of the assignee.

Nor do we think, even if it were held that this was one of the special cases in which it might assume jurisdiction, that its decree was binding upon appellees.

An examination of the petition and decree discloses these facts.

Neither appellees nor any of the general creditors of Seiter were parties to this proceeding. Nor were they in any way represented in it.

Seiter by his deed of assignment passed to his assignee the legal and equitable title of all the property scheduled, including overdrafts, absolutely and beyond his control. Lumber Co. v. Union Nat. Bank, 159 Ill. 465. Nothing that he might say or do, subsequent to the assignment, could affect the title or character of any asset so conveyed. The general creditors were not then represented by Seiter; Weir, the assignee, was not the agent of the general creditors. He was the agent of Seiter for the distribution of the assets in his hands as assignee. Bouton v. Dement, 123 Ill. 142; Hanford Oil Co. v. First Nat. Bank, 126 Ill. 590. He did not, therefore, represent the general creditors.

Appellees, as general creditors, had an interest in the assets in the hands of the assignee, from the date of proving their claims. Levy v. Ch. Nat. Bank, 158 Ill. 88; Gib-

son v. Rees, 50 Ill. 402. They were, therefore, entitled to be represented in any proceeding that affected their interests. If not represented in such proceeding they were not concluded by any judgment or decree entered in it. Neither would such judgment or decree, or any finding of fact stated in it, be competent evidence against them in any subsequent proceeding.

In Brush v. Fowler, 36 Ill. 58, it is said: "We understand the doctrine to be universally recognized that no one can be injuriously affected by a judgment or decree of any court who was not a party to such judgment or decree."

To the same effect is Broom's Legal Maxims, Sec. 758; Greenleaf on Evidence, Vol. 1, Sec. 523; Schulz v. Schulz, 138 Ill. 665. Neither can it be said that appellees are privies, so as to be bound by the appearance of either Seiter or of his assignee. After the date of the assignment, December 10, 1894, neither of them could do or say anything that would affect the interests of appellees. The evidence shows that the petition of Turner to the Circuit Court was filed, not only after the assignee had taken possession of the estate, but also after notice to creditors to file claims had been given, and also after both Turner and appellees had filed their claims.

Appellees were not then privies to either Seiter or Weir, and so not represented by them.

It may be said further that the finding upon which the decree is based, namely, that the overdrafts represented the Riggin fund, is not based upon any issue tendered in the petition. It is a finding of fact where there is no allegation to warrant the finding.

After alleging the appointment of Seiter as trustee, and his failure to turn over the fund to Turner, the petition alleges:

" Your petitioner further represents that the said Henry Seiter on the 10th day of September, 1894, made, executed and delivered to Marshall W. Weir a deed of assignment, assigning and transferring to said Weir all of the property,

real and personal, of him, the said Henry Seiter, for the benefit of the creditors of said Seiter, including the funds of said James H. Riggin, insane, in the hands of said Seiter, trustee as aforesaid."

And again, in the prayer of the petition:

"That upon a hearing hereof, the said Henry may be ordered to pay and turn over to your petitioner the trust fund so found to be in his hands; that in case the said Henry Seiter has transferred and turned over to his assignee, the said Marshall W. Weir, the said trust fund, intermingled and mixed with his individual property, then he, the said Weir, may be ordered and adjudged and decreed to turn over and pay to your petitioner the said trust fund in full, with legal . interest thereon, from January 14, 1895, out of the first funds coming into his hands as such assignee, and that your petitioner may be decreed to have a first and prior lien upon all the funds in the hands of Weir as assignee for the payment of the trust fund."

It will be seen from these quotations from the petition, that there is no averment in it that the Riggin fund had been kept separate by Seiter, or was in any way separate and distinguishable from other assets in the hands of his assignee; or that it was represented by any overdrafts. Yet the finding in the decree is, "that between the 7th day of February, 1894, and December 10, 1894, there was paid out of the bank of Henry Seiter & Co., in overdrafts to sundry customers of said bank, the sum of $23,546.07; that in said overdrafts was included the said trust fund belonging to James H. Riggin, and further finds that Weir, as assignee, is collecting such overdrafts, together with the assets of Seiter."

The decree orders that Weir, as assignee, pay to Turner, the trustee, the sum of $14,025.59, with interest from January 14, 1895, or such part thereof as he can realize out of the assets in his hands designated as overdrafts, and that said sum of $14,025.59, included in said assets as overdrafts, is the property and funds of said trust fund belonging to said Riggin, etc.

In other words, without it having been so alleged in the petition, the decree finds that $14,025.59, being the Riggin

fund, is a part of $23,546.07 owed by debtors to Seiter and represented by overdrafts on the Henry Seiter & Company Bank, in the hands of assignee. It invades the jurisdiction of the County Court, which alone has authority to direct the distribution of the insolvent's estate by ordering that $14,025.59 of these overdrafts should be applied in payment of the Riggin fund. As the County Court in the case at bar rightly holds that there is no evidence before it to show that the Riggin fund is embraced in the overdrafts, there results the natural conflict and confusion in administration which an interference, by one court claiming jurisdiction with another court having jurisdiction, is likely to cause. This further fact appearing in evidence is proper to be noted. Both Turner, the assignee, and Weir, the assignee, are sureties on Seiter's bond as trustee for $25,000.

Turner petitions to have the Riggin fund declared a lien, and entitled to priority of payment. Weir and Seiter respond. The petitioner and the respondent Weir are both sureties on Seiter's bond. Seiter is interested to protect his bondsmen. All parties to the petition then are interested in having $14,025.59 taken out of the fund in the assignee's hands for the payment of general creditors, and applied specially in payment of the claim for which Turner and Weir are sureties. No one interested in opposing the petition is made a party. It is not easy to imagine a proceeding in which both complainant and defendants would more heartily and harmoniously desire the same decree.

We conclude, then, that the decree of the Circuit Court was not competent evidence to prove that the Riggin fund was embraced in the overdrafts; that the court being without jurisdiction, its decree is not binding upon the County Court, the assignee, or upon appellees. That the evidence in the case at bar fails to show that the overdrafts include the Riggin fund, but does show that this fund was mixed and mingled with the money in the Seiter bank and is incapable of separation or identification.

The order and decree of the County Court is therefore affirmed.