In the Matter of Robert L. KNETZER, Bankrupt.

Robert W. JAFFKE, Petitioner-Appellee,

v.

William C. DUNHAM, as Trustee of the Estate of Robert L. Knetzer, Bankrupt, Respondent-Appellant.

No. 11508.

United States Court of Appeals Seventh Circuit.

Jan. 13, 1956.

On Motion to Modify Feb. 13, 1956.

G. William Horsley, L. H. Lenz, Springfield, Ill., for defendant-appellant.

Roscoe Bonjean, William M. Giffin, Wanless, Craven & Giffin, Springfield, Ill., for plaintiff-appellee.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal from an order of the United States District Court for the Southern District of Illinois, Southern Division, sitting in Bankruptcy in the

Matter of Robert L. Knetzer, Bankrupt. The order appealed from required the trustee of the bankrupt estate to pay from the funds in his possession to the petitioner, Robert W. Jaffke, the sum of $27,400.00 which the court found that the bankrupt, Robert L. Knetzer, had procured from Jaffke by fraud subsequent to October 21, 1948, the date on which Knetzer had been adjudged a bankrupt.

The fraud by which Knetzer was alleged to have induced the petitioner to give him the money which petitioner seeks to reclaim from the trustee in bankruptcy consisted of representations by Knetzer to the petitioner made during the period from December 7, 1950, to and including March of 1951. These representations were that he (Knetzer) was the manager of a large corporation known as the Bison Construction and Mining Corporation in which a number of well to do men were interested; that this corporation was to build a large number of homes in a housing project near the Air Force Base at Great Falls, Montana; that a similar project which Knetzer had just finished promised to pay a 50 per cent profit; that an influential man was arranging for a loan to the corporation from the Reconstruction Finance Corporation, but that it was such a large scale operation that it would take two years to complete it and that in order to initiate the business the corporation needed money then; and that the investors in this project would share pro rata in the profits.

Jaffke's petition alleges that these representations by Knetzer were false and were known to Knetzer to be false but that they were believed by Jaffke to be true, and that by these false representations Knetzer induced Jaffke to give him for investment in the project money in the total sum of $47,980.00.

In the hearing on Jaffke's petition, Jaffke testified that because of Knetzer's false representations he (Jaffke) paid to Knetzer during the period between December 7, 1950 and October 22, 1951, both dates inclusive, a total of $47,980.00. Jaffke's petition alleged that of this amount Knetzer turned over to the defendant trustee the sum of $36,000.00.

In arriving at the amount of $27,400.00, which the trial court ordered that the petitioner recover from the trustee, the court apparently subtracted from the amount alleged to have been paid to the trustee by Knetzer, $3,800.00 which Jaffke admitted that he knew was to be paid to the trustee to keep Knetzer out of prison, and $4,800.00 which Jaffke admitted had been repaid to him by a relative of the bankrupt.

In seeking to set aside the order of the trial court the appellant trustee questions the admission of certain evidence which was received in the hearing on Jaffke's petition. The appellant first questions the competence of the testimony of the petitioner as to his dealings with Knetzer. The objection to this testimony is based on Section 2 of the Evidence Act of the State of Illinois, Illinois Revised Statutes, c. 51, § 2 (Bar Association Edition 1955). This statute provides in part:

"No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of any habitual drunkard, or person who is mentally ill or mentally deficient, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee * * *."

The testimony of the petitioner was objected to on the ground that he was an "interested party" within the meaning of the statute for the reason that the respondent trustee was acting not only as trustee in bankruptcy for the creditors but also as trustee and representative for the widow and minor children who were heirs of the deceased bank-

rupt. The bankrupt, Knetzer, died prior to the hearing on the petition and left a widow and children.

We think this objection was not well taken. The obvious purpose of the Illinois statute is to protect persons under disability and the heirs of deceased persons, and Knetzer's heirs did not stand to gain anything out of the bankruptcy estate. During the period of time in which the false representations were made the bankrupt, Knetzer, was engaged in attempts to comply with a court order to turn over to the trustee the sum of $250,000.00, which represented the amount of assets which the court had found that Knetzer owned and had concealed. On Knetzer's failure to comply with the turn over order he was found to be in contempt of court and was sent to jail. The court permitted Knetzer to leave the jail on different occasions in the custody of the United States Marshal or of bailiffs of the court. This permission was granted on Knetzer's promises that he could and would use his freedom to procure the required $250,000.00 and thereby purge himself of contempt. During the period from December 7, 1950 to November 16, 1951, Knetzer procured and turned over to the trustee a total amount of only $79,923.72.

On January 27, 1950, the trustee wrote a letter to Knetzer's creditors explaining that Knetzer was hopelessly insolvent; that all of his assets had been sold and turned into cash; that the trustee then had on hand a total of $74,000.00; and that claims in the total amount of $3,844,776.54 had been filed in the Knetzer bankruptcy matter.

From these undisputed facts it seems certain that Knetzer's only interest in his bankruptcy matter while he was alive was to try to get out or stay out of jail. It was certain that the trustee at the close of the bankruptcy proceeding could have nothing left to turn back to Knetzer. It follows that after Knetzer's death there could be nothing left to turn over to Knetzer's heirs. The

contest here over the funds in the trustee's hands could only affect the petitioner and the other creditors. Under these circumstances we think the trial court did not err in admitting Jaffke's testimony as to his transactions with Knetzer.

The trustee points out that the petitioner filed this action against both Knetzer and the trustee; but the record shows that after the death of Knetzer, his death was suggested to the court and the action then proceeded against the trustee alone, pursuant to Rule 25 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

After carefully reviewing all of the evidence in this case it seems clear that there was a sufficient basis for the trial court's finding that Jaffke did pay to Knetzer the total sum of $47,980.00 because the petitioner believed the false statements that Knetzer made to him concerning the fictitious construction and mining corporation and the likelihood of large returns for those investing in it. But petitioner's proof that he had been so defrauded by Knetzer was not enough to establish the preference he sought over the other creditors. Most of the claimants in this bankruptcy matter had also been defrauded by Knetzer's representations that he would sell and deliver to them automobiles and tractors which Knetzer knew he could not deliver. But by these representations Knetzer induced them to make large deposits on the puchase price of automobiles and tractors which they ordered. Jaffke himself had been so defrauded by Knetzer to the extent of $11,300.00, for which Jaffke's attorneys filed for him a general claim with the trustee in bankruptcy.

But in the instant proceeding Jaffke claims that since Knetzer, after he had been adjudged a bankrupt, procured the amount of $47,980.00 from him by fraud and then paid $36,000.00 of that amount to the trustee, the money so paid did not become the property of the trustee because it was impressed with a trust in favor of the petitioner. Thus, argues

the petitioner, he is entitled to recover the amount of $36,000.00 from the assets in the hands of the trustee.

 To support his claim on this theory it was just as necessary for the petitioner to prove that the $36,000.00 was paid to and became a part of the funds in the hands of the trustee as it was to prove that Knetzer had procured this money by fraud. This we think the petitioner has failed to do. It is true that Knetzer in August 1952, while in jail, executed an affidavit stating that of the money he received from Jaffke he paid $36,000.00 to the trustee. This affidavit was tentatively received in evidence over the objection of counsel for the trustee but at the conclusion of the hearing the trial judge sustained the objection and the trustee's motion to strike Knetzer's affidavit from the record. There was no cross-appeal by the petitioner to question this action by the trial court, and this court may not consider Knetzer's affidavit as evidence in this case.

At the top of page 19 of petitioner's brief in this court we find the following statement:

"Plaintiff's Exhibit No. 29 offered in evidence is a record of a prior proceeding, pursuant to an adjourned creditor's meeting, in this bankruptcy cause wherein Knetzer admitted under oath in open court that since his bankruptcy he obtained more than Forty Thousand Dollars ($40,000.00) from plaintiff; and from which sum, payment had been made to William C. Dunham, his trustee under the turnover order (Tr. 160; original record 291-301.)"

The original record to which we are thus cited does show that Knetzer testified that he had received from Jaffke more than $40,000.00 but it does not show what part, if any, of that amount was paid to the trustee. Even if the record had shown that Knetzer testified in that former hearing as petitioner claims, his testimony could not be considered as evidence in this matter because the trial court also granted the motion of counsel for the trustee to strike from the evidence the entire record of that former hearing.

 Without the affidavit of Knetzer we find no sufficient evidentiary basis for the finding of the trial court that $36,000.00 of the money which Jaffke paid to Knetzer was delivered by Knetzer to the trustee. The order of the trial judge to turn over his concealed assets in the amount of $250,000.00 was served on Knetzer July 11, 1949. On November 1, 1949, the trustee reported that Knetzer had not complied. Knetzer was then ordered to appear on November 15, 1949, and show cause why he should not be adjudged in contempt. On December 1, 1949, Knetzer was held to be in contempt and ordered committed to jail until he had obeyed the turn over order, but execution of this order was stayed until January 11, 1950.

The evidence and stipulations of the parties indicate that others than Jaffke had been defrauded by Knetzer on the same story that Knetzer had told to Jaffke. These other persons included Riley, Petty and Sammons. Prior to any payments to Knetzer by Jaffke, Riley paid Knetzer, between June 28, 1950 and September 15, 1950, the total sum of $32,389.00. Between April 14, 1951 and July 1951, Petty paid Knetzer $44,000.-00; and between October 1, 1951 and February 1, 1952, Sammons paid Knetzer $101,550.00. Jaffke's payments to Knetzer amounted to $47,980.00 and were made between December 7, 1950 and October 22, 1951. The total amount thus paid to Knetzer by these four men was $225,919.00. Of this amount Knetzer paid to the trustee during the period here in question only $79,923.00. It is evident, therefore, that $145,996.00 of the amount Knetzer received from these four men was not paid over to the trustee.

During the month of December 1950 Knetzer made payments to the trustee in the total amount of $11,500.00. This amount might have been paid from the

$250,000.00 in assets which the court found that Knetzer owned and had concealed, from the funds Riley had paid to Knetzer, or from the money Jaffke had paid to Knetzer. Although Knetzer was being pressed for payments on the turn over order he paid nothing further to the trustee during the months of January, February and March of 1951. During the months of April, May and June of 1951 Knetzer, or some one in his behalf, paid to the trustee $55,923.-72. During that period Knetzer, in addition to the funds he had received from Riley and Jaffke, also received from Petty $44,000.00 which Knetzer may have paid to the trustee as part of the total paid to the trustee during that period. The last six payments of $1,000.00 each made by Knetzer to the trustee may have been from the $101,550.00 which Sammons paid to Knetzer between October 1, 1951 and February 1, 1952, or they may have been from the payments made by any one of the other three men from whom Knetzer had fraudulently procured funds.

A finding of fact by a trial court may not be based on a guess of what might have happened. It can only be grounded on evidence which supports a reasonable inference as to what did happen. We find no evidence remaining in this record after the Knetzer affidavit was excluded to justify an inference that $36,000.00 of Jaffke's money was paid over to the trustee.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

SCHNACKENBERG, Circuit Judge (concurring).

I concur in the foregoing opinion, with the exception that I believe the judgment should be reversed and there is no need for a remandment. Upon the hearing in the district court both parties had an opportunity to, and did, offer evidence which they considered relevant to all issues presented there and later in this court. There is no occasion now for a further hearing. Both sides have had their day in court.

On Motion to Modify

SWAIM, Circuit Judge.

On consideration of the respondent-appellant's motion to modify the judgment in this cause and alternative motion for a clarification of the opinion and judgment, and of the petitioner-appellee's answer thereto,

It Is Ordered By The Court that the last paragraph of the majority opinion in this cause, filed January 13, 1956, be modified as follows:

The judgment of the District Court is reversed, and the cause is remanded with instructions to enter judgment for the respondent-appellant.

SCHNACKENBERG, Circuit Judge (concurring).

I now modify my previous concurring opinion by striking all of it except the first sentence.