In the Matter of Robert L. KNETZER, Bankrupt.

Robert W. JAFFKE, Petitioner-Appellee,

v.

William C. DUNHAM, as Trustee of the Estate of Robert L. Knetzer, Bankrupt, Respondent-Appellant.

No. 11508.

United States Court of Appeals Seventh Circuit.

May 2, 1957.

G. William Horsley, Springfield, Ill., for appellant.

Roscoe Bonjean, William M. Giffin, Springfield, Ill., for appellee.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

On January 13, 1956, this court reversed the judgment of the District Court which ordered that William C. Dunham, as trustee in bankruptcy, pay to the petitioner, Robert W. Jaffke, the sum of $27,400, on the theory that the petitioner had traced into the hands of the trustee that amount of funds which the bankrupt, Robert L. Knetzer, had procured from the petitioner by fraud. In our opinion, 229 F.2d 232, we held that the evidence in this case was not sufficient to sustain the District Court's finding that Knetzer had paid over to the trustee the $36,000 which the bankrupt had obtained from the petitioner by fraud.

The Supreme Court of the United States granted certiorari, 351 U.S. 949, 76 S.Ct. 847, 100 L.Ed. 1473, and reversed and remanded the cause to this court for our determination as to the admissibility and weight of an affidavit made by the bankrupt, Knetzer, on August 1, 1952. 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314.

In this affidavit Knetzer stated:

"That during the period from December 7, 1950 to October 23, 1951, I, Robert L. Knetzer, borrowed the sum of $47,980.00 (Forty-seven thousand nine hundred eighty & no/100 dollars) from Robert W. Jaffke, of St. Louis, Missouri, and that during the period of December 7, 1950 to November 1, 1951, I paid the sum of $36,000.00 (Thirty-six thousand dollars) from the above borrowed sum of $47,980.00 to Wm. C. Dunham, Trustee in Bankruptcy of Robert L. Knetzer, for purposes of remaining out of jail. I am of sound mind and body and no threats or promises were made to me in order to obtain this statement."

The bankrupt died prior to the time the petition herein was heard. The trial court first admitted the bankrupt's affidavit, but at the conclusion of the hearing the court sustained the objection of the respondent-trustee to the admission of the affidavit and struck it from the record as being inadmissible.

There is, and could be, no real dispute between the parties that the petitioner, under the facts of this case, was entitled to reclaim from the funds in the hands of the trustee in bankruptcy such amount, if any, as the bankrupt obtained from the petitioner by fraud and then traced into the hands of the trustee. See People ex rel. Auditor of Public Accounts v. West Side Trust & Savings Bank, 376 Ill. 339, 33 N.E.2d 607; Evans v. Moore, 247 Ill. 60, 93 N.E. 118; Woodhouse v. Crandall, 197 Ill. 104, 64 N.E. 292, 58 L.R.A. 385; Union National Bank of Chicago v. Goetz, 138 Ill. 127, 27 N.E. 907. There was conflict in the evidence as to whether the bankrupt had obtained the money in question from the petitioner by fraud, but there was sufficient evidence to sustain the finding of the trial court that the petitioner was induced by the fraudulent misrepresentations of the bankrupt to pay most of the money which he paid over to the bankrupt, and the evidence showed that there were sufficient funds in the hands of the trustee to pay to Jaffke the amount claimed by him as a preferred claim. The petitioner contends that the District Court erred in granting the trustee's motion to strike the Knetzer affidavit from the record. Petitioner insists that the affidavit by Knetzer was a declaration against the pecuniary interest of the bankrupt and that since the bankrupt was dead at the time of the hearing the court should not have struck the affidavit from the record.

To determine this question it is necessary to review again some of the facts involved in the bankruptcy matter. Knetzer was adjudged a bankrupt on October 21, 1948. On August 11, 1949, the trial court found that Knetzer owned and was concealing assets in the amount of $250,000. The court then ordered Knetzer to turn over that amount to the trustee in bankruptcy on or before November 1, 1949. On Knetzer's failure to comply with the court's order, he was found, on December 1, 1949, to be in contempt of court and was sent to jail to be confined until the turnover order was complied with. On different occasions Knetzer was released from jail on his solemn promise that he could and would procure the $250,000 and pay it to the trustee and thereby purge himself of contempt. However, Knetzer turned over to the trustee a total of only $79,-923.72. On January 27, 1950, the trustee explained to the creditors that Knetzer was hopelessly insolvent; that all of his assets had been converted into cash; that the trustee had on hand only $74,-000; and that claims of over $3,500,000 had been filed in the bankruptcy matter. It was thus clearly shown that there was no possibility of there ever being any surplus in the hands of the trustee which would be payable to the heirs of Knetzer, who had died on August 26, 1953, leaving a widow and two children.

The record here is replete with evidence that Knetzer's sole purpose before he was adjudged a bankrupt was to defraud as many people as possible out of their money by false pretenses. After Knetzer was adjudged a bankrupt and sent to jail for contempt his primary purpose was to get out and stay out of jail and to accomplish this purpose he did not hesitate to do or say anything he considered necessary to obtain the funds required to purge himself of contempt and to avoid criminal prosecution.

The record in this case clearly shows that at the time the Knetzer affidavit was obtained, August 1, 1952, Jaffke, the petitioner, had learned that Knetzer could not be trusted. Earlier in 1952 Jaffke had appeared before the grand jury in Springfield and testified. As a result of that grand jury hearing an indictment was returned against Knetzer on May 8, 1952, charging him with having obtained money by false representations from Jaffke in an amount exceeding $5,000, which was transported across state lines. (Appellee's brief, page 19.) On the last $4,800 which Jaffke turned over to Knetzer in October of 1951, Jaffke required that Knetzer give him security. When the petitioner was asked why he required security on this last loan, he replied, "I had realized that this man [Knetzer] could not be trusted." Yet, knowing that Knetzer could not be trusted and that he was then in jail for contempt and facing trial on the indictment charging fraud, Jaffke prepared the affidavit here in question.

On page 39 of the appellee's brief in this court counsel for Jaffke frankly admit that: "It can be fairly stated that the trial court was not lenient in its rulings when plaintiff was presenting his case in chief, and strictly followed the rules of evidence applicable thereto." This blanket endorsement of the trial court's action on the question as to the admissibility of evidence included the court's refusal to permit the petitioner to answer the question as to whether Knetzer told him how much of the money Knetzer had received from him was paid over to the trustee in bankruptcy, and the striking of petitioner's answer that he received the information for the affidavit from Knetzer. Without these bits of testimony, Knetzer's affidavit stating that he paid $36,000 of the money he had "borrowed" from Jaffke to the trustee was the only evidence on which the tracing of petitioner's money into the hands of the trustee could stand.

We agree that a declaration against the declarant's existing pecuniary or proprietary interests by one with personal knowledge of the facts declared may, under certain circumstances, be properly admitted in evidence, but we do not believe that this record discloses facts sufficient to bring the Knetzer affidavit with-

in the exception to the hearsay rule of evidence even as that rule is stated by the petitioner. The petitioner states the claimed exception to the hearsay rule as follows: "However, where there is a necessity for the use of the declaration usually because the declarant at the time of the trial is dead, and *where the declaration is made under circumstances regarded as rendering it trustworthy,* and usually where the declaration or statement is against the interest of the declarant *at the time he makes the statement or declaration,* the declaration is admissible in evidence." (Emphasis added.)

We need not determine whether the statements in the Knetzer affidavit were against Knetzer's pecuniary interest. If the statements in the affidavit were against his pecuniary interest they fell far short of having been "made under circumstances regarded as rendering [them] trustworthy," one of the requirements which the petitioner admits was necessary to make the affidavit admissible. As we pointed out above, the trial court at first admitted Knetzer's affidavit, but after hearing all of the evidence in the case the trial court granted the trustee's motion to strike the affidavit from the record. The trial court could not have listened to all of the evidence in this case without realizing that statements made by Knetzer, sworn or unsworn, could not be relied upon. The most serious threat of Knetzer's serving a prison sentence was the pending indictment for fraud by the grand jury before which Jaffke had testified. This provided a very real reason for Knetzer to furnish any affidavit, even though false, requested by Jaffke which might help Jaffke recover at least part of the money Jaffke had paid to Knetzer.

The trial court properly struck the Knetzer affidavit from the record and without that affidavit no part of the money obtained by Knetzer from Jaffke was traced into the hands of the trustee.

The judgment of the trial court must be and it is

Reversed.